<u>**UNITED STATES DISTRICT COURT**</u>
<u>**EASTERN DISTRICT OF MICHIGAN**</u>

ANTHONY R. CYR;                                          Case No.
LINDSEY M. FORESTER-CYR; and                            Hon:
ALC MEDICAL SUPPLIES, LLC

          Plaintiffs,

vs.

REAL VALUE PRODUCTS, LLC;
SPFM, LP;
FRED BATTAH;
MICHAEL BATTAH;
SHALIMAR MAAKAR;
DUSTIN (TYLER) WARNER; and
EZSCRIPTRX, LLC

          Defendants.

_____/

<u>**COMPLAINT**</u>

Plaintiffs, ANTHONY R. CYR, LINDSEY M. FORESTER-CYR and ALC MEDICAL SUPPLIES, LLC**,** by and through their attorneys, WHITING LAW, hereby allege as follows:

**I.**     <u>**INTRODUCTION**</u>

1.     This is a case about a sales representative that put his trust and faith in two conspiring businesses and businessmen that agreed to pay him commissions on his sales and referrals but then not only refused to pay him, but fraudulently inflated costs; falsified sales reports; undercut his sales and stole his sales for their own financial gain; and ultimately never paid him for millions of dollars in commissions in violation of the Sales Representatives Act. These Defendants have scammed and defrauded Plaintiffs of their ability to earn a living.

2.     The Defendants' conspiracy is multi-layered in that it not only involves a refusal to pay commissions, but also includes falsifying internal cost of the goods; using other businesses to deflect and hide commissionable sales from Plaintiffs clients; refusing to provide sales reports upon

request; and unilaterally cutting commissions and stopping the payment of agreed upon salaries without any formal notice, thus effectively terminating Plaintiff without proper notification as required with employment laws.

3.      All the acts and omissions of the Defendants, as described throughout this Complaint, were thoroughly thought out, planned, and done with intent.

4.      By this Complaint, and as detailed in each count set forth below, Plaintiffs bring this action for: (1) violations of the Sales Representative Commission Act, MCL 600.2961; (2) violations of the Federal Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962© and (d); (3) common law fraud; (4) civil conspiracy; (5) breach of contract; (6) breach of implied contract/unpaid commissions; (7) quantum meruit; (8) promissory estoppel; and (9) unjust enrichment.

5.      The Defendants, through their fraudulent scheme have defrauded Plaintiffs of owed commissions in excess of an estimated $3,000,000.00 (THREE MILLION DOLLARS) to which Plaintiffs are entitled to treble damages pursuant to statute and common law.

## II.      **THE PARTIES**

### A.  **PLAINTIFFS**

6.      That Plaintiff, ANTHONY R. CYR, (hereinafter "CYR") is a resident of the City of Commerce, County of Oakland, State of Michigan.

7.      That Plaintiff, LINDSEY M. FORESTER-CYR, (hereinafter "FORESTER-CYR") is a resident of the City of Commerce, County of Oakland, State of Michigan.

8.      That Plaintiff, ALC MEDICAL SUPPLIES, LLC, (hereinafter "ALC MEDICAL") is a Michigan corporation with its registered address located in the City of Commerce, County of Oakland, State of Michigan.

9.      That Plaintiffs maintained sales relationships with numerous pharmacies throughout Michigan and the United States prior to agreeing to work with Defendants.

10.     That at all times relevant to the allegations contained in this Complaint, the Plaintiffs resided in and/or were authorized to conduct business in the State of Michigan.

### B.  DEFENDANTS

#### 1.  SPFM, LP

11.     That Defendant SPFM, LP, (hereinafter "SPFM) is a Texas limited partnership with its registered address located in the City of San Antonio, State of Texas.

12.     That Defendant SPFM is the parent company of Defendant RVP along with over a dozen other subsidiaries that provide wholesale products ranging from pharmaceuticals, beauty products, to groceries. In addition, SPFM provided human resources and payroll services for its subsidiaries and other controlled entities.

13.     That Defendant SPFM is owned by laypersons Fred Battah (hereinafter "F. Battah"); his brother Michael Battah (hereinafter "M. Battah"); and Shalimar Maakar (hereinafter "Maakar").

14.     That at all relevant times, SPFM was controlled by RVP, F. Battah, M. Battah, and Maakar.

15.     That SPFM's principal place of business is located in San Antonio, Texas.

16.      That SPFM illegally refused to pay Plaintiff A. Cyr his negotiated salary, failed to properly notify him that he was no longer employed, illegally refused to pay Plaintiffs their owed commissions, falsified sales and commissions reports, directed its other business to do the same and conspired to defraud Plaintiffs of their due salary, commissions and benefits.

### 2. Real Value Products, LLC

17.  That Defendant, REAL VALUE PRODUCTS, LLC, (hereinafter "RVP") is a Texas corporation with its registered address located in the City of San Antonio, State of Texas.

18.  That Defendant RVP is a pharmaceutical wholesaler selling drugs, creams and other medical supplies to pharmacies throughout the United States via sales representatives and through online platforms.

19.  That Defendant RVP is owned by layperson Fred Battah (hereinafter "F. Battah).

20.  At all relevant times, RVP was owned and controlled by F. Battah.

21.  That RVP's principal place of business is located in San Antonio, Texas.

22.  That RVP accepted sales from Plaintiffs' customers then unlawfully refused to pay Plaintiffs the agreed upon commission and/or directed the sales to other entities under Defendants' control to hide and unlawfully refuse to pay Plaintiffs its earned commissions. Further, Defendant RVP and its owner/manager F. Battah falsified its actual costs to unlawfully reduce or eliminate the sales commissions owed to Plaintiffs.

### 3. Fred Battah

23.  That Defendant Fred Battah is a resident and citizen of the State of Texas.

24.  At all times relevant to this Complaint, Fred Battah owned SPFM, RVP and EZSCRIPTRx, LLC (hereinafter "EZSCRIPTRx") along with several other associated businesses.

25.  At all times relevant to this Complaint, F. Battah controlled SPFM, RVP and EZSCRIPTRx along with several other associated businesses.

### 4. Michael Battah

26.  That Defendant Michael Battah (hereinafter "M. Battah") is a resident and citizen of the State of Texas.

27.     At all times relevant to this Complaint, M. Battah owned Defendant SPFM.

28.     At all times relevant to this Complaint, M. Battah controlled SPFM along with several other associated businesses.

### 5.   Shalimar Maakar

29.     That Defendant Shalimar Maakar (hereinafter "Maakar") is a resident and citizen of the State of Texas.

30.     At all times relevant to this Complaint, Maakar owned Defendant SPFM.

31.     At all times relevant to this Complaint, Maakar controlled SPFM along with several other associated businesses.

### 6.   EZSCRIPTRx, LLC

32.     That Defendant, EZSCRIPTRx, LLC, (hereinafter "EZSCRIPTRx") is a California corporation with its registered address in Westlake Village, California, however its principal place of business is in San Antonio, Texas.

33.     That EZSCRIPTRx is a cloud-based pharmacy tool that provides real-time verification of insurance benefits to ensure the pharmacy are only taking orders for patients that have active and appropriate insurance coverage. This is a perfect partner for SPFM and RVP as their sales team bring pharmacies to them for the purchase of the wholesale drugs, creams and supplies.

34.     That at all times relevant to this Complaint, F. Battah and Dustin "Tyler" Warner (hereinafter "Tyler") owned Defendant EZSCRIPTRx.

35.     That at all times relevant to this Complaint, F. Battah, Tyler, M. Battah and Maakar controlled EZSCRIPTRx.

### 7.   Dustin "Tyler" Warner

36.     That Defendant Dustin "Tyler" Warner (hereinafter "Tyler") is a resident and citizen

of Texas.

37.    That at all times relevant to this Complaint, Tyler owned Defendant EZSCRIPTRx.

38.    That at all times relevant to this Complaint, Tyler controlled Defendant EZSCRIPTRx.

**III.    JURISDICTION AND VENUE**

39.    Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this action relating to claims brought by the Plaintiffs under 18 U.S.C. § 1961 *et seq.* because they arise under the laws of the United States.

40.    Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 against each Defendant and because it is between citizens of different states.

41.    Supplemental jurisdiction over the Plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

42.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the majority of the acts at issue in the Complaint were carried out within the Eastern District of Michigan.

**IV.    FACTUAL ALLEGATIONS**

43.    Prior to meeting Defendant F. Battah, Plaintiff A. Cyr was self-employed working for his own company, Plaintiff ALC Medical Supplies selling medical supplies and other items to pharmacies and doctor's offices.

44.    In addition to the medical sales, Plaintiff A. Cyr developed a new medical cream called Synerderm.

45.    In November of 2016, F. Battah reached out to A. Cyr in an effort to come to an agreement on an exclusive distribution deal for the Synerderm cream.

46.     F. Battah had his private jet flown up to Michigan from Texas to bring A. Cyr down to discuss the potential deal on Synerderm, but they were not able to reach a deal.

47.     After a couple months of discussions, A. Cyr and F. Battah reached an agreement wherein A. Cyr would bring pharmaceutical sales to F. Battah and RVP.

48.     The parties agreed that A. Cyr would receive a 50% commission of the gross profits on any sales of Synerderm that A. Cry brought to RVP and A. Cyr would receive a 30% commission of the gross profits on any other products.

49.     A. Cyr trusting F. Battah and RVP, they did not put the agreement into writing.

50.     At that same time, A. Cyr brought his first client to RVP – Adam Brouis. Brouis initially purchased for Q. Pharma but later switched to Safechain.

51.     It did not take long for F. Battah and RVP to take advantage of A. Cyr because after paying A. Cyr some commissions, F. Battah started hiding the sales from A. Cyr.

52.     In November of 2017, A. Cyr confronted F. Battah about the commissions on the sales from Brouis F. Battah claimed it was just a mistake and paid ALC $15,000.00 but refused to provide the actual reports for the sales.

53.     Hoping this was a single event or an honest mistake, A. Cyr continued to put his trust in F. Battah and RVP.

54.     F. Battah, RVP and/or SPFM have never paid A. Cyr or ALC Medical the agreed upon commissions for sales from Brouis, Safechain or Q. Pharma.

55.     In November of 2017, A. Cyr was put onto payroll at SPFM with a salary of $144,000.00 per year but it was done as a draw. A. Cyr was to continue to receive 50% commissions on the sale of Synerderm and 30% commissions on all other sales, but he would have to pay back his monthly salary in order to receive commissions above the $12,000.00 monthly salary.

56.     Despite being placed on salary with SPFM, A. Cry was paid by RVP at times and other times by SPFM. In addition, A. Cry's commissions were typically paid to his company, ALC Medical.

57.     Roughly 1 year into the agreement, F. Battah refused to pay Plaintiff's the full 50% commissions on the Synerderm sales. When Plaintiffs asked F. Battah why the commissions were not being paid at the agreed upon 50% F. Battah simply replied – "take it or leave it."

58.     Although Plaintiffs did not agree to the reduced commissions, A. Cyr continued to work for RVP, F. Battah and SPFM because he had no alternative.

59.     In January of 2019, A. Cyr was introduced to a group out of Miami that were looking for a new wholesaler. Over the next couple months, A. Cyr continued to develop the relationship with this group in hopes of landing a large new client.

60.     In early March of 2019, A. Cyr flew down to Miami to meet with the group in person. A. Cyr had dinner with Rodney Martinez, James Cassasnovas, and Greg Newton. At the dinner, A. Cyr brokered a deal on pricing for numerous products.

61.     The following day, F. Battah arrived in Miami on his private jet and flew everyone back to Texas. During the flight, F. Battah offered an illegal kickback to them on Voriconazoles, however they refused and only requested lower pricing instead to which everyone agreed although it immediately impacted A. Cyr's commissions.

62.     Once Martinez, Cassasanovas and Newton got things situated sales started flowing in around the beginning of May 2019.

63.     From May 2019 through November 2019, sales were growing and the group was doing well. So, well that Martinez and Cassasanovas parted ways with Newton and created MCGH which acted as the led purchaser for their different entities.

64.     Around this time, F. Battah was sitting on a failed pharmacy as part of some other deal where the former owner owed F. Battah a bunch of money. Seeing an opportunity to quietly cut Plaintiff out of the equation, F. Battah approached MCGH with a plan to sell them the pharmacy called Spring Pharmacy. On call with MCGH, F. Battah offered Spring Pharmacy, but told them they had to purchase directly from RVP and cut A. Cyr out.

65.     In addition to refusing to pay Plaintiff their earned commissions, F. Battah was falsely reporting his costs associated with the purchases to further reduce Plaintiff's commissions.

66.     In January of 2020, without notice or warning, F. Battah reduced A. Cyr's salary from $144,000.00 to $52,000.00.

67.     For the next year or so, Plaintiffs struggled along trying to make the best of the situation. In fact, in August of 2020, A. Cyr approached F. Battah about the commissions related to MCGH because he knew they were doing significant sales and he was assured by F. Battah that once they paid off Spring Pharmacy he would begin paying Plaintiffs' commissions again. This never happened.

68.     In late 2019 F. Battah introduced A. Cyr to Dustin "Tyler" Warner, the named owner of EZSCRIPTRx, LLC and told him to introduce his pharmacy clients to their product.

69.     EZSCRIPTRx, LLC is a platform that allows pharmacies to check the insurance of patients to make sure they aren't taking clients that don't have insurance coverage.

70.     EZSCRIPTRx is owned by and/or financed by F. Battah even though Tyler is listed as the owner.

71.     EZSCRIPTRx hired A. Cyr and CLC Medical to sell their platform to his existing clients, entering into a written agreement on March 3, 2020.

72.     Per the agreement, ALC Medical and A. Cyr were to be paid based upon the number of searches done each month as follows:

| Monthly Number of NDC Searches | Retail Price |
|---|---|
| ≤5,000 | |
| $3,500.00 | |
| ≤6,500 | $4,550.00 |
| ≤8,000 | $5,600.00 |
| ≤9,500 | $6,650.00 |
| ≤10,000 | $6,000.00 |
| ≤15,000 | $9,000.00 |
| ≤20,000 | $12,000.00 |
| ≤25,000 | $15,000.00 |
| ≤30,000 | $13,500.00 |
| ≤35,000 | $15,750.00 |
| ≤40,000 | $18,000.00 |
| ≤45,000 | $20,250.00 |
| ≤50,000 | $20,000.00 |
| ≤75,000 | $26,250.00 |
| ≤100,000 | $30,000.00 |
| >100,000 | $0.30 per NDC Search |

73.     EZSCRIPTRx paid A. Cyr for several months but at F. Battah's direction stopped paying him his commissions without any notice whatsoever.

74.     In June of 2021, F. Battah sent A. Cyr a text message saying that he could no longer pay him because he did not have any sales coming in.

75.     At the time, while A. Cyr knew that MCGH was still doing significant business with F. Battah and RVP, he did not know how much.

76.     To the best of Plaintiff's knowledge, MCGH is still doing business with Defendants on behalf of the following pharmacies:

        Dumdieter Pharmacy LLC
        Frazier Pharmacy
        River State Pharmacy

10

Care 101 Pharmacy, LLC
Precision Pharmacy
Dickinson Pharmacy
Principle League Pharmacy
Marina Bay Pharmacy, LLC
Long Meadow
Spring Pharmacy

77.     Plaintiff has been able to confirm that RVP has received sales from MCGH for the following pharmacies from January 1, 2021, through September 10, 2021:

| PHARMACIES | Payment Amount 01/01/20–1 - 09/10/2021 |
|---|---|
| CARE 101 | $2,971,700.32 |
| DICKINSON | $1,000,750.78 |
| FRAZIER | $282,356.46 |
| LONG MEADOW | $860,895.30 |
| MARINA BAY | $1,149,158.43 |
| PRECISION | $1,006,800.47 |
| PRINCIPLE LEAGUE | $707,551.16 |
| RIVER STATE | $2,596,015.89 |
| RX SPRING | $1,580,420.57 |
| TOTALS | $12,155,649.38 |

78.     Plaintiff anticipates that the sales from 2020 are similar in volume.

79.     On July 1, 2021, without anything more than the text message from F. Battah, A. Cyr's salary stopped being paid.

80.     A. Cyr did not receive any notice, COBRA documentation or even a phone call from human resources at RVP, SPFM or EZSCRIPTRx.

81.     After sending a letter of representation to Defendants, A. Cyr finally received a letter from SPFM in November 2021, notifying him that his benefits were terminated and had some information regarding COBRA benefits.

**V.     DAMAGES**

82.     The fraudulent and intentional conduct by the Defendants injured A. Cyr, L. Cyr and ALC Medical personally and in its business for the reason of the aforesaid violations of law.

83.     Although it is not necessary for Plaintiffs to calculate damages with specificity and only Defendant is in possession of the necessary information to properly calculate said damage, plus Plaintiff continues to accrue damages, Plaintiff's damages are in excess of $3,000,000.00 and growing.

84.     Plaintiffs seeks punitive damages and attorney fees necessitated by this action.

**VI.     CAUSES OF ACTION**

**COUNT I**

**VIOLATIN OF 18 U.S.C. § 1962(c)**
**(SPFM Enterprise)**
**Against Real Value Products, LLC., EZSCRIPTRx, LLC.,**
**Fred Battah, Michael Battah, Shalimar Maakar, and Dustin "Tyler" Warner**

85.     Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 84 set forth above as if fully set forth herein.

86.     SPFM constitutes an enterprise, as defined in 18 U.S.C. § 1961 (4), engaged in, and the activities of which affect, interstate commerce.

87.     In connection with each of the claims identified within this Complaint, RVP, F. Battah, M. Battah, Maakar, Tyler and EZSCRIPTRx ("Count I Defendants") intentionally caused to be prepared and mailed false documentation by SPFM, or knew that such false documentation would be mailed or emailed in the ordinary course of SPFM's business, or should have reasonably foreseen

that the mailing or email of such false documentation by SPFM would occur, in furtherance of the Count I Defendants scheme to defraud Plaintiffs.

88.     As documented above, the Count I Defendants repeatedly and intentionally provided, or knew that false documentation would be submitted to Plaintiffs through U.S. Mail and/or email falsely reporting or under-reporting sales and falsely over-reporting expenses, which they knew would be relied upon by Plaintiff with the sole purpose of defrauding Plaintiff from its earned commissions.

89.     F. Battah, M. Battah and Maakar owned and managed SPFM and were responsible for all actions taken by SPFM and its staff.

90.     As a result of, and in reasonable reliance on, these false and misleading documents and representations, Plaintiff was defrauded of its earned commission payments.

91.     The Count I Defendants' conduct in violation of 18 U.S.C. §1962(c) was the direct and proximate cause of Plaintiffs' injury.

92.     By virtue of the Count I Defendants' violation of 18 U.S.C. §1962(c), Plaintiffs are entitled to recover from them three times the damages sustained by the Count I Defendants' actions, together with the costs of suit, including reasonable attorney fees.

## COUNT II

**VIOLATIN OF 18 U.S.C. § 1962(d)**
**(SPFM Enterprise)**
**Against Real Value Products, LLC., EZSCRIPTRx, LLC.,**
**Fred Battah, Michael Battah, Shalimar Maakar, and Dustin "Tyler" Warner**

93.     Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 92 set forth above as if fully set forth herein.

94.     Defendants RVP, F. Battah, M. Battah, Maakar, Tyler and EZSCRIPTRx ("Count II Defendants") conspired with each other to violate 18 U.S.C § 1962(c) through the facilitation of the

operation of SPFM.

95.     The Count II Defendants each agreed to further, facilitate, support, and operate the SPFM enterprise.

96.     As such, the Count II Defendants conspired to violate U.S.C § 1962(c).

97.     The purpose of the conspiracy was to defraud Plaintiff from payments of earned commission by virtue of its unlawful conduct.

98.     The Count II Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of falsified sales reports and expense reports.

99.     Plaintiffs have been injured in its business and person by reason of this conspiratorial conduct.

100.    By virtue of this violation of 18 U.S.C. § 1962(c), the Count II Defendants are jointly and severally liable to Plaintiffs and Plaintiffs are entitled to recover from each three times the damages sustained by the Count II Defendant unlawful conduct, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## **COUNT III**

### **VIOLATION OF 18 U.S.C. § 1962(C)**
### **(Real Value Products Enterprise)**
### **Against SPFM, LP, EZSCRIPTRx, LLC.,**
### **Fred Battah, Michael Battah, Shalimar Maakar, and Dustin "Tyler" Warner**

101.    Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 100 set forth above as if fully set forth herein.

102.    RVP constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, the activities of which affect, interstate commerce.

103.    In connection with each of the claims identified within this Complaint, SPFM, F. Battah, M. Battah, Maakar, Tyler and EZSCRIPTRx ("Count III Defendants") intentionally caused

to be prepared and mailed false documentation by RVP, or knew that such false documentation would be mailed or emailed in the ordinary course of RVP's business, or should have reasonably foreseen that the mailing or email of such false documentation by RVP would occur, in furtherance of the Count III Defendants scheme to defraud Plaintiffs.

104.    As documented above, the Count III Defendants repeatedly and intentionally provided, or knew that false documentation would be submitted to Plaintiffs through U.S. Mail and/or email falsely reporting or under-reporting sales and falsely over-reporting expenses, which they knew would be relied upon by Plaintiff with the sole purpose of defrauding Plaintiff from its earned commissions.

105.    F. Battah, M. Battah and Maakar owned and managed RVP and were responsible for all actions taken by RVP and its staff.

106.    As a result of, and in reasonable reliance on, these false and misleading documents and representations, Plaintiff was defrauded of its earned commission payments.

107.    The Count III Defendants' conduct in violation of 18 U.S.C. §1962(c) was the direct and proximate cause of Plaintiffs' injury.

108.    By virtue of the Count III Defendants' violation of 18 U.S.C. §1962(c), Plaintiffs are entitled to recover from them three times the damages sustained by the Count III Defendants' actions, together with the costs of suit, including reasonable attorney fees.

## COUNT IV

### VIOLATION OF U.S.C.  § 1962(d)
**(Real Value Products Enterprise)**
**Against SPFM, LP, EZSCRIPTRx, LLC.,**
**Fred Battah, Michael Battah, Shalimar Maakar, and Dustin "Tyler" Warner**

109.    Plaintiffs re-allege, re-plead, and incorporate by reference paragraphs 1 through 108 set forth above as if fully set forth herein.

110.    Defendants SPFM, F. Battah, M. Battah, Maakar, Tyler and EZSCRIPTRx ("Count IV Defendants") conspired with each other to violate 18 U.S.C § 1962(c) through the facilitation of the operation of RVP.

111.    The Count IV Defendants each agreed to further, facilitate, support, and operate the SPFM enterprise.

112.    As such, the Count IV Defendants conspired to violate U.S.C § 1962(c).

113.    The purpose of the conspiracy was to defraud Plaintiff from payments of earned commission by virtue of its unlawful conduct.

114.    The Count IV Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of falsified sales reports and expense reports.

115.    Plaintiffs have been injured in its business and person by reason of this conspiratorial conduct.

116.    By virtue of this violation of 18 U.S.C. § 1962(c), the Count IV Defendants are jointly and severally liable to Plaintiffs and Plaintiffs are entitled to recover from each three times the damages sustained by the Count IV Defendant unlawful conduct, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V

**VIOLATION OF U.S.C. § 1962(c)**
**(EZSCRIPTRx Enterprise)**
**Against SPFM, LP, RVP, LLC.,**
**Fred Battah, Michael Battah, Shalimar Maakar, and Dustin "Tyler" Warner**

117.    Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 116 set forth above as if fully set forth herein.

118.    EZSCRIPTRx constitutes an enterprise, as defined in 18 U.S.C. § 1961(4), engaged in, the activities of which affect, interstate commerce.

119.     In connection with each of the claims identified within this Complaint, SPFM, RVP, F. Battah, M. Battah, Maakar, and Tyler ("Count V Defendants") intentionally caused to be prepared and mailed false documentation by EZSCRIPTRx, or knew that such false documentation would be mailed or emailed in the ordinary course of EZSCRIPTRx's business, or should have reasonably foreseen that the mailing or email of such false documentation by EZSCRIPTRx would occur, in furtherance of the Count V Defendants scheme to defraud Plaintiffs.

120.     As documented above, the Count V Defendants repeatedly and intentionally provided, or knew that false documentation would be submitted to Plaintiffs through U.S. Mail and/or email falsely reporting or under-reporting sales and falsely over-reporting expenses, which they knew would be relied upon by Plaintiff with the sole purpose of defrauding Plaintiff from its earned commissions.

121.     F. Battah, and Tyler owned and managed EZSCRIPTRx and were responsible for all actions taken by EZSCRIPTRx and its staff.

122.     As a result of, and in reasonable reliance on, these false and misleading documents and representations, Plaintiff was defrauded of its earned commission payments.

123.     The Count V Defendants' conduct in violation of 18 U.S.C. §1962(c) was the direct and proximate cause of Plaintiffs' injury.

124.     By virtue of the Count V Defendants' violation of 18 U.S.C. §1962(c), Plaintiffs are entitled to recover from them three times the damages sustained by the Count V Defendants' actions, together with the costs of suit, including reasonable attorney fees.

## COUNT VI

**VIOLATION OF U.S.C. § 1962(d)**
**(EZSCRIPTRx Enterprise)**
**Against SPFM, LP, RVP, LLC.,**
**Fred Battah, Michael Battah, Shalimar Maakar, and Dustin "Tyler" Warner**

125.     Plaintiffs re-allege, re-plead, and incorporate by reference paragraphs 1 through 124set forth above as if fully set forth herein.

126.     Defendants SPFM, RVP, F. Battah, M. Battah, Maakar, and Tyler ("Count VI Defendants") conspired with each other to violate 18 U.S.C § 1962(c) through the facilitation of the operation of EZSCRIPTRx.

127.     The Count VI Defendants each agreed to further, facilitate, support, and operate the EZSCRIPTRx enterprise.

128.     As such, the Count VI Defendants conspired to violate U.S.C § 1962(c).

129.     The purpose of the conspiracy was to defraud Plaintiff from payments of earned commission by virtue of its unlawful conduct.

130.     The Count VI Defendants were aware of this purpose and agreed to take steps to meet the conspiracy's objectives, including the creation of falsified sales reports and expense reports.

131.     Plaintiffs have been injured in its business and person by reason of this conspiratorial conduct.

132.     By virtue of this violation of 18 U.S.C. § 1962(c), the Count VI Defendants are jointly and severally liable to Plaintiffs and Plaintiffs are entitled to recover from each three times the damages sustained by the Count VI Defendant unlawful conduct, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT VII

**COMMON LAW FRAUD**
**Against All Defendants**

133.     Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 132 set forth above as if fully set forth herein.

134.    The scheme to defraud perpetrated by SPFM, RVP, EZSCRIPTRx, F. Battah, M. Battah, Maakar and Tyler ("Count VII Defendants") was dependent upon the material misrepresentation of facts that the Defendants were obligated to provide.

135.    The misrepresentations of fact made by the Count VII Defendants include but not limited to, those material misrepresentations discussed in section IV *supra.*

136.    The Count VII Defendants representations were false or required disclosure of additional facts to render the information furnished not misleading.

137.    The misrepresentations were intentionally made by the Count VII Defendants in furtherance of their scheme to defraud Plaintiffs by submitting to Plaintiff falsified documents and reports knowing that Plaintiff would rely upon the submissions.

138.    The Count VII Defendants misrepresentations were known to be false and were made to avoid making appropriate payments pursuant to the Michigan Sales Representative Commission Act and common law.

139.    Plaintiffs reasonably relied upon such material misrepresentation to its detriment.

140.    As a direct and proximate result of the Count VII Defendants' fraudulent representations and acts, Plaintiffs have been damaged in its business and person as previously described.

## COUNT VIII

### CIVIL CONSPIRACY
### Against All Defendants

141.    Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 140 set forth above as if fully set forth herein.

142.    Defendants SPFM, RVP, EZSCRIPTRx, F. Battah, M. Battah, Maakar and Tyler ("Count VIII Defendants") combined and concerted to accomplish the unlawful purpose of

defrauding Plaintiffs by falsifying sales reports and expenses to avoid paying Plaintiffs pursuant to the Michigan Sales Representative Commissions Act.

143.    The Count VIII Defendants worked together to achieve an unlawful purpose (namely, defrauding Plaintiffs for personal gain).

144.    This purpose was known to all of the Count VIII Defendants and intentionally pursued.

145.    Despite knowing that the Count VIII Defendants owed Plaintiffs additional earned commissions Defendants did not pay Plaintiffs commissions.

146.    In reasonable reliance upon the false sales reports and expenses submitted to Plaintiff by the Count VIII Defendants Plaintiff was unaware of the additionally owed commissions.

147.    All of the Count VIII Defendants directly benefited from the misrepresentations by not paying Plaintiffs the commissions that were due and owing.

148.    All of the Count VIII Defendants actively and intentionally partook in the scheme to defraud Plaintiffs and also encouraged and aided the other Count VIII Defendants in the commission of acts done for the benefit of all Count VIII Defendants and to the unjust detriment of Plaintiffs.

149.    Accordingly, all of the Count VIII Defendants are equally liable for the fraud perpetrated on Plaintiffs pursuant to their conspiracy.

<u>**COUNT IX**</u>

**UNJUST ENRICHMENT**
**Against All Defendants**

150.    Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 149 set forth above as if fully set forth herein.

151.    Plaintiffs relied upon the representations of Defendants SPFM, RVP, EZSCRIPTRx, F. Battah, M. Battah, Maakar, and Tyler ("Count IX Defendants") in its fraudulent sales reports and costs reports resulting in grossly under paid commissions to Plaintiff.

152.   The Count IX Defendants have been unjustly enriched by unlawfully underpaying commissions owed to Plaintiffs.

153.   The Count IX Defendants retention of the owed commissions would violate the fundamental principles of justice, equity and good conscience.

## COUNT X

### BREACH OF CONTRACT
### Against SPFM, RVP and EZSCRIPTRx

154.   Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 153 set forth above as if fully set forth herein.

155.   That at all times relevant hereto, Plaintiff A. Cyr fully and in good faith performed all his duties and services as a sales representative for Defendants SPFM, RVP and EZSCRIPTRx ("Count X Defendants") thereby entitling him to the sales commissions that he earned.

156.   All conditions precedent, if any, to Count X Defendants' duty to pay A. Cyr the sales commissions have been fulfilled.

157.   Count X Defendants have failed and refused to compensate A. Cyr and/or ALC Medical pursuant to the terms and conditions of the agreement between the parties.

158.   As a result of Count X Defendants failure to perform in accordance with the terms of the parties' agreements, Plaintiffs have sustained economic damages, including significant unpaid commissions.

159.   Count X Defendants' failure to pay the earned commissions is a material breach of the contract between the parties.

160.   Count X Defendants' breach of the agreement between the parties has proximately caused the economic damages, including the significant unpaid commissions.

## COUNT XI

**BREACH OF IMPLIED CONTRACT**
**Against SPFM, RVP and EZSCRIPTRx**

161.    Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 160 set forth above as if fully set forth herein.

162.    SPFM, RVP and EZSCRIPTRx ("Count XI Defendants") expected to and indicated through conduct, communications, and course of dealing, including prior payments, that they would pay A. Cry commissions for sales by customers brought to Count XI Defendants by A. Cry and Plaintiffs.

163.    A. Cyr expected to be paid and compensated for the sales services he provided to Count XI Defendants in accordance with the terms of the agreement between the parties.

164.    As a result of the sales services performed by A. Cyr, Count XI Defendants have received significant economic benefit.

165.    Count XI Defendants have failed and refuse to pay A. Cyr for the economic benefits derived as a result of the sales services provided by A. Cyr.

166.    Count XI Defendants' unjust failure to comply with the terms of the agreements with A. Cyr has resulted in significant economic damages.

167.    Plaintiffs have made numerous demands for payment, yet Count XI Defendants have wrongfully and unlawfully refused to make payment.

168.    Count XI failure to pay the commissions is a material breach of the implied agreement between the parties.

169.    As the result of Count XI Defendants' failure to perform in accordance with the terms of the implied agreement, A. Cyr has sustained significant economic damages.

**COUNT XII**

**VIOLATION OF SALES REPRESENTATIVE COMMISSION ACT**
**Against SPFM, RVP and EZSCRIPTRx**

170.     Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 169 set forth above as if fully set forth herein.

171.     Pursuant to agreements with Defendants SPFM, RVP and EZSCRIPTRx ("Count XII Defendant") Plaintiff is entitled to commissions based upon the sales brought to Count XII Defendants.

172.     Throughout his employment with Count XII Defendants, A. Cyr fully and in good faith performed all his duties and services as Count XII Defendants' sales representatives, thereby earning the sales commissions.

173.     All conditions precedent, if any, to Count XII Defendants's duty to pay A. Cyr the sales commissions have been fulfilled.

174.     Count XII Defendants have unlawfully failed and refused to compensation A. Cyr for the sales commissions.

175.     A. Cyr has made demands that Count XII Defendants pay the unpaid commissions as required by the Sales Representative Commission Act (MCLA 600.2961, *et seq.*).

176.     Count XII Defendants continue to refuse to pay the sales commissions.

177.     Count XII Defendants' refusal to pay the sales commissions is a violation of the SRCA.

178.     Count XII Defendants' violation of the SRCA has proximately caused significant economic damage to A. Cyr.

179.     Count XII Defendants have intentionally failed to pay commissions that are currently due, owing, and continuing to grow.

180.     Count XII Defendants' intentional and willful violation of the SRCA entitles A. Cyr

to recover from Count XII Defendants his actual damages plus additional damages in the amount of two times the unpaid commissions and reasonable attorney fees and costs necessitated by this suit.

### COUNT XIII

**PROMISSORY ESTOPPEL**
**Against SPFM, RVP and EZSCRIPTRx**

181.    Plaintiffs re-allege, re-plead, and incorporates by reference paragraphs 1 through 169 set forth above as if fully set forth herein.

182.    Defendants SPFM, RVP and EZSCRIPTRx ("Count XIII Defendants") have received the benefit of the sales procured by A. Cyr.

183.    Count XIII Defendants have promised to pay commissions to A. Cyr.

184.    At the time that the promise was made, Count XIII Defendants knew or should have known that A. Cyr had relied and would rely upon the promise in procuring sales for Count XIII Defendants in exchange for payment of sales commissions.

185.    A. Cyr procured sales for Count XIII Defendants in reliance upon the promise.

186.    Count XIII Defendants caused Plaintiffs damages by failing to comply with its promise by not paying the commissions it agreed to pay to Plaintiffs.

187.    As a direct and proximate result of Count XIII Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages as previously set forth.

### VII.    DEMAND FOR RELIEF

WHEREFORE, Plaintiffs ALC Medical, A. Cyr and L. Cyr respectfully pray that a judgement entered against all Defendants, jointly and severally, for the actual damages incurred in excess of Seventy-Five Thousand Dollars ($75,000.00), plus treble damages along with costs and attorney fees in favor of Plaintiff.

## VIII.   **DEMAND FOR JURY TRIAL**

The Plaintiffs hereby demand a trial by jury on all claims.

Respectfully Submitted,

*/s/ Paul J. Whiting, III*

_____

WHITING LAW
PAUL J. WHITING III (P61570)
Attorneys for Plaintiff
28819 Franklin Rd Ste 200
Southfield, MI 48034
(248)355-5900/(248)355-5901–Fax
Dated:  February 11, 2022           paul.whiting@844whiting.com