UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY R. CYR;
LINDSEY M. FORESTER; and
ALC MEDICAL SUPPLIES, LLC

Case No. 22-10290

Honorable Sean F. Cox
United States District Court Judge

  Plaintiffs,

v.

REAL VALUE PRODUCTS, LLC;
SPFM, LP;
FRED BATTAH;
MICHAEL BATTAH;
SHALIMAR MAAKAR;
DUSTIN (TYLER) WARNER; and
EZSCRIPTRX, LLC

  Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

  This is a breach of contract, conspiracy, and fraud case. Plaintiffs allege they entered two service contracts with Defendants, that Defendants conspired to hide financial information from Plaintiffs, and that Plaintiffs were never paid the full commission to which they were entitled. This matter is before the Court on Defendants' collective Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue. A hearing was held on September 22, 2022. For the reasons set forth below, the Court GRANTS Defendants' Motion with respect to Michael Battah, Shalimar

1

Maakar, and Dustin (Tyler) Warner and DENIES Defendants' Motion with respect to Fred Battah, Real Value Products, LLC, SPFM, LP, and EZSCRIPTRx, LLC.

## BACKGROUND

Acting through counsel, on February 11, 2022, Plaintiffs, Anthony Cyr (Cyr), Lindsey M. Forester-Cyr, and ALC Medical, LLC, filed this action (Compl., ECF No. 1) against Defendants, SPFM, LP ("SPFM"), Real Value Products, LLC ("RVP"), Fred Battah ("F. Battah"), Michael Battah, Shalimar Maakar, EZSCRIPTRx, LLC, and Dustin "Tyler" Warner ("Warner"). Defendants responded by filing a Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue on April 25, 2022 (ECF No. 13). This Court granted Plaintiffs leave to file an amended complaint on April 26, 2022 (ECF No. 14). Plaintiffs filed an Amended Complaint on May 17, 2022, which is the operative complaint in this case (Am. Compl., ECF No. 15). In response, Defendants renewed their Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue (Defs.' Mot. Dismiss, ECF No. 17), which is the matter currently before the Court.

Plaintiffs' amended complaint includes the following eight causes of action (Am. Compl. ¶ 4): 1) Violation of Mich. Comp. Laws § 600.2961, the Sales Representative Commission Act, 2) Violation of 18 U.S.C. § 1962, the Federal Influenced and Corrupt Organizations (RICO) Act, 3) "Fraud," 4) "Civil Conspiracy," 5) "Breach of Contract," 6) "Breach of Implied Contract," 7) "Promissory Estoppel," 8) "Unjust Enrichment." Plaintiffs seek judgment awarding damages, costs, and attorney fees.

Plaintiff Anthony Cyr ("Cyr") is a medical supply salesman and Michigan resident (Am. Compl. ¶¶ 6, 53). Before contracting with Defendants, Cyr worked for his own company, Co-Plaintiff ALC Medical Supplies, LLC (Am. Compl. ¶ 53). In addition to selling medical devices, Cyr also developed his own medical cream called Synerderm (Am. Compl. ¶ 55).

2

In November 2016, Cyr was contacted by Defendant F. Battah, on behalf of Co-Defendant RVP. F. Battah sought a distribution deal for Cyr's newly developed medical cream. (Am. Compl. ¶¶ 56, 58). After months of negotiation, F. Battah and Cyr entered into an oral agreement (Am. Compl. ¶¶ 58-60). The agreement stated Cyr would receive commissions for referring clients to RVP and for any sales of Cyr's medical cream (Am. Compl. ¶59).

Cyr alleges that shortly after the deal was finalized, RVP began hiding sales, and that he was never paid his full commission based on the agreed upon rates (Am. Compl. ¶ 62). After confronting F. Battah, Cyr was put on SPFM's (RVP's parent company) Payroll in 2017 (Am. Compl. at ¶ 66). Nonetheless, Cyr did not receive his full commissions. *Id.* Cyr's salary remained constant until it was cut in half in January 2020, then eliminated without notice in July 2021. (Am. Compl. ¶¶ 78, 91).

Plaintiffs allege nearly identical facts relating to Cyr's involvement with EZSCRIPTRx. Plaintiffs allege Cyr was approached by Defendants before ultimately entering a sales contract with EZSCRIPTRx on March 3, 2020. The contract stated Cyr would sell EZSCRIPTRx's platform for a commission. (Am. Compl. ¶¶ 83-84). In June 2021, Cyr. stopped receiving payment from EZSCRIPTRx, and never received the full commission he was owed (Am. Compl. ¶ 86).

## STANDARD OF REVIEW

In a motion to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff has the burden of proving the court's jurisdiction over the defendant. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the court finds no need for an

3

evidentiary hearing, "the burden on the plaintiff is relatively slight" and the court must "consider the pleadings and affidavits in the light most favorable to the plaintiff." *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988), *citing Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980). Where no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdiction to avoid dismissal. *Neogen*, 282 F.3d at 887.

Additionally, under Federal Rule of Civil Procedure 12(b)(3), a defendant may move to dismiss the plaintiff's complaint "for improper venue." This Court follows the majority approach and burdens the defendant with proving that venue is improper. *See Vizachero v. McAlees*, 2013 WL 3270948, at 6 (E.D. Mich. 2013); *c.f. Steelcase v. Mar-Mol Co.*, 218 F. Supp. 2d 920, 936 (W.D. Mich. 2002). The court may examine facts outside the complaint but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. *Audi AG & Volkswagen of America, Inc. v. Izumi*, 204 F.Supp.2d 1014, 1017 (E.D. Mich. 2002) (citations omitted). If the court finds that venue is improper, the case may be dismissed or transferred to a district in which it could have been brought. 28 U.S.C. § 1406(a).

## ANALYSIS

Personal jurisdiction is split into two categories: general and specific. General personal jurisdiction provides a court possessing proper subject matter jurisdiction with the authority "to enter a binding personal judgment [over the defendant] regardless of where the facts or circumstances giving rise to the cause of action may have occurred, in the state or out." *See* Mich. Comp. Laws Ann. Chap. 7, Prac. Comment. at 606 (West 1981). By contrast, specific personal jurisdiction confers power upon the court to enter personal judgments against the defendant only upon claims which arise out of the act(s) establishing the jurisdictional connection between the defendant and the forum. *Id*.

4

Personal jurisdiction analysis requires the court to determine whether both the state's long-arm statute and the Due Process Clause of the United States Constitution permit the exercise of jurisdiction. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627 (6th Cir. 1998). Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal Constitutional Due Process requirements and thus, the two questions become one. *Chandler v. Barclays Bank PLC,* 898 F.2d 1148, 1150–51 (6th Cir. 1990).

To pass Constitutional muster, a defendant's conduct and connection with the forum state must be sufficient that he should reasonably anticipate being haled into court [in the forum state]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Personal jurisdiction must be analyzed and established over each defendant independently. *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

### A. General Jurisdiction

Plaintiffs concede that general personal jurisdiction is improper over all Defendants. (Hr'g Tr. 3, ¶¶ 15-16, Sept. 22, 2022).

### B. Specific Jurisdiction

This Court finds it may exercise specific personal jurisdiction over Defendants F. Battah, RVP, SPFM, and EZSCRIPTRx. This Court finds Plaintiffs have plead insufficient facts to exercise specific personal jurisdiction over Warner. Lastly, Plaintiffs concede this Court may not exercise specific personal jurisdiction over Michael Battah and Shalimar Maakar.

**1. Fred Battah**

This Court may exercise specific jurisdiction over F. Battah. Defendants argue personal jurisdiction is improper because F. Battah's only contact with Michigan is a brief landing at a

Michigan airport (Defs.' Mot. Dismiss ¶ 1, ECF No. 17). However, Defendants gloss over multiple contacts that are ultimately dispositive.

The Sixth Circuit has established a three-part test for determining whether the due process component of personal jurisdiction is satisfied in the context of specific jurisdiction. First, the defendant must purposefully avail itself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from defendant's activities there. Finally, defendant's activities or the consequences thereof must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *S. Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

Determining whether a defendant has purposefully availed themself of the privilege of acting in the forum state is an inexact science. Often, the best approach is to compare the facts of the case with that of factually similar cases. *AlixPartners, LLP v. Brewington*, 133 F. Supp. 3d 947, 957 (E.D. Mich. 2015).

This case is factually similar to *Della Porta v. Horseco, Inc.*, No. 19-13733, 2020 WL 7240517 (E.D. Mich. Dec. 9, 2020). In *Della Porta*, a computer programmer, Michigan resident, and owner of an LLC, was sought out by a foreign business owner to design an internet platform. *Della Porta*, *supra* at 1. The parties negotiated and ultimately agreed to an oral contract to design the platform. *Id.* at 2. The developer and business owner remained in constant digital communication throughout the development of the platform. *Id*. During platform development, the business owner sent some money owed to a Michigan bank account. However, the business owner refused to pay the remaining balance when the project was complete. *Id*. The court found the business owner had sufficient contacts with a Michigan resident to exercise personal jurisdiction.

> [D]efendants are not being haled into court in Michigan as the result of 'random,' 'fortuitous' or 'attenuated' contacts or of the 'unilateral activity of another party or third person.' *Burger King,* 471 U.S. at 475 (1985) (internal citations omitted).

6

> Defendants contracted with a Michigan individual and LLC, communicated and directed the work of Plaintiffs in Michigan over the course of nearly a year, and sent several payments to a Michigan bank account. Their failure to pay has predictably caused an injury for which they are being haled into court.

*Della Porta, supra* at 8. *Della Porta* is comparable to this case. F. Battah, a foreign business owner, sought out Cyr, a Michigan resident and owner of an LLC, to negotiate an exclusive distribution contract (Am. Compl. ¶ 56, ECF No. 15). F. Battah sent his private jet to Michigan to pick up Cyr and negotiate deal terms (Am. Compl. ¶ 57). Unable to reach a deal, negotiations carried on after Cyr returned to Michigan. The parties eventually entered into an exclusive distribution agreement while Cyr was in Michigan (Am. Compl. ¶ 58). Throughout the contract life, F. Battah and RVP sent a portion of the money they owed Cyr to a Michigan bank account, but Cyr was never paid his full entitlement (Am. Compl. ¶ 69). Like in *Della Porta*, F. Battah and RVP's failure to pay caused an injury for which it is reasonable to hale them into court.

To satisfy element two of the Sixth Circuit's test, the cause of action must arise from Defendants' "suit-related conduct" that creates a substantial connection with the forum state. *Walden* v. *Fiore*, 571 U.S. 277, 284. As mentioned above, F. Battah contracted with a Michigan domiciliary (Cyr), communicated with and directed the work of Cyr in Michigan, and Battah's company sent several payments to a Michigan bank account. Battah's alleged breach of contract has caused injury in Michigan, and this lawsuit arises out of that injury.

The final element of the Sixth Circuit's test is there must be a substantial connection between Defendants' alleged conduct and the forum state. Defendants, relying on *Walden v. Fiore*, argue their contacts were specifically with Cyr, and that any contact with Michigan is "random" or "fortuitous" because "the state of Mr. Cyr's residence was irrelevant to Defendants' alleged

7

activities" (Defs.' Mot. to Dismiss at 9, ECF No. 17). Judge Borman addressed an identical argument in *Delta Porta*, 2020 WL 7240517, at *5:

> Defendants argue, relying on *Walden v. Fiore,* that contacts between the parties were not contacts with Michigan, but rather contacts with Plaintiffs, who happen to be Michigan-based. 571 U.S. 277 (2014); Defendants' reliance on *Walden* to attempt to characterize Defendants' contacts as such is mistaken.
>
> In *Walden*, the Supreme Court considered whether a federal court in Nevada had jurisdiction over a Georgia police officer who had seized money in a Georgia airport from Nevada residents and then filed a false affidavit against those Nevada residents knowing that it would affect them in Nevada. *Walden v. Fiore*, 571 U.S. 277 (2014).
>
> The Court found that the defendant officer lacked minimum contacts with Nevada because the officer's conduct occurred in Georgia and because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.* at 287-89. The officer's only connection to Nevada was by way of the plaintiffs he targeted residing there. *Id.* Based on these facts, the court held that "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* at 289-90.
>
> Unlike in *Walden*, Defendants here reached out to a Michigan resident for services, contracted with that resident, and directed communications and payments over the course of a year to that Michigan resident. The Defendants here, who purposely reached out to Michigan and engaged in a year-long business relationship cannot be said to have caused a "mere injury" to a forum resident. Unlike the defendant in *Walden*, the Defendants here have numerous other contacts with the forum state, not just an injury to a plaintiff who happens to reside there.

Additionally, the Sixth Circuit has criticized a similar argument. A defendant attempted to characterize all jurisdictional contacts as contacts with the plaintiffs. In rejecting said argument, the court noted "[i]t would severely limit the availability of personal jurisdiction if every defendant could simply frame his conduct as targeting only the plaintiffs and not the forum state." *MAG IAS Holdings, Inc. v. Schmuckle,* 854 F.3d 894, 901 (6th Cir. 2017).

In Conclusion, F. Battah has created sufficient contacts with the Michigan to satisfy all three prongs of the Sixth Circuit's test. This Court may exercise personal jurisdiction over F. Battah.

### 2. Real Value Products, LLC

This Court may exercise specific jurisdiction over RVP. To take jurisdiction over a corporation or LLC,[1] a court must examine contacts with the forum state initiated by one who is authorized to act on the corporation's behalf. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, (1945*); Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014). Plaintiffs allege sufficient facts to show F. Battah was authorized to act for RVP.

Plaintiffs claim, and Defendants do not refute, that F. Battah owns RVP (Am. Compl. ¶ 20, ECF No. 15) and that F. Battah targeted and contracted with Cyr on behalf of RVP (Am. Compl. ¶¶ 56-59). Therefore, all of F. Battah's contacts with Michigan, discussed above, should be attributed to RVP. Since F. Battah and RVP share the same contacts, the Court's ruling on personal jurisdiction is also the same. This Court may exercise personal jurisdiction over RVP.

### 3. EZSCRIPTRx, LLC

This Court may exercise specific jurisdiction over EZSCRIPTRx. Plaintiffs' claim for specific jurisdiction over EZSCRIPTRx is nearly identical to its claim for RVP. Plaintiffs allege that F. Battah, acting on behalf of EZSCRIPTRx, sought out Cyr in Michigan (Am. Compl. ¶ 80); negotiated a deal for Cyr to sell EZSCRIPTRx in exchange for commission (Am. Compl. ¶ 84);

---

[1] For personal jurisdiction purposes, the Supreme Court treats corporations and LLCs the same. Therefore, the cases and statutes cited often refer to corporations but have equal weight with respect to LLCs. Jennifer Dulgosz, *Personal Jurisdiction and LLCs – Does Citizenship Matter?*, JDSupra (March, 2018), https://www.jdsupra.com/legalnews/personal-jurisdiction-and-llcs-does-99868/.

then, after finalizing the deal, EZSCRIPTRx paid a portion of Cyr's commissions to a Michigan bank account before ultimately ceasing payment (Am. Compl. at ¶ 85).

These near identical facts warrant the same analysis as F. Battah and RVP. The intentional targeting of, and contracting with, a Michigan resident is sufficient contact with Michigan for this Court to exercise specific personal jurisdiction over EZSCRIPTRx.

### 4. SPFM, LP

This Court may exercise specific personal jurisdiction over SPFM as the parent company of RVP (Am. Compl. ¶ 12). In general, a court will not have personal jurisdiction over a parent company because of mere ownership of a subsidiary subject to jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir. 1998). For a court to assert specific jurisdiction over a parent company, Plaintiffs must allege facts of direct involvement in the operation of the subsidiary or sufficient independent contacts with the forum state. *Motel 6, supra,* at 1274; *Velandra v. Regie Nationale des Usines Renault*, 336 F.2d 292, 297 (6th Cir. 1964).

In *Third Nat. Bank in Nashville*, the Sixth Circuit found personal jurisdiction was proper over a parent company in a similar situation. The parent corporation had never directly conducted business in Tennessee but owned a subsidiary that created substantial contacts with Tennessee. *Third Nat. Bank in Nashville v. WEDGE Grp. Inc.,* 882 F.2d 1087, 1090 (6th Cir. 1989). The Sixth Circuit held the district court may exercise jurisdiction over the parent based on the subsidiary's contacts with Tennessee because the parent was actively involved in managing the subsidiary. *Id*. The Court found the parent was actively involved in managing the subsidiary because the parent owned 100% of the subsidiary, officers of the parent corporation served as directors of the subsidiary, the parent corporation's officers were involved in negotiations with third parties on behalf of the subsidiary, and the parent corporation deposited money in a third party's checking account to induce them to enter into an agreement with the subsidiary. *Id*.

10

Plaintiffs' complaint alleges facts similar to *Third Nat. Bank*. Plaintiffs contend that F. Battah owns and controls both SPFM and RVP (Am. Compl. ¶¶ 13, 20, 29). Plaintiffs allege that Cyr, as part of his contract with RVP, was placed on SPFM's payroll (Am. Compl. at ¶ 66). Plaintiffs allege that SPFM was at all relevant times controlled by RVP (Am. Compl. ¶ 14). Lastly, Plaintiffs allege that even though Cyr was on SPFM's payroll, he was often paid instead by RVP (Am. Compl. at ¶ 67).

Like in *Third Nat.* Bank, Plaintiffs have alleged sufficient facts, to show SPFM and its officers, mainly F. Battah, were actively involved in the operation of RVP. SPFM's involvement in the operation of RVP is sufficient for this Court to exercise jurisdiction over it.

### 5. Dustin "Tyler" Warner

This Court finds it may not exercise personal jurisdiction over Warner because there is no evidence that Warner created meaningful contacts with Michigan. Plaintiffs neglected to submit affidavits in support of their claim for jurisdiction and are therefore limited to the allegations in their complaint.

Plaintiffs' complaint alleges Warner is an owner of Defendant EZSCRIPTRx, LLC (Am. Compl. ¶ 45) and that Warner controls EZSCRIPTRx. (Am. Compl. ¶ 46). Plaintiffs allege Warner conducts business within Michigan generally (Am. Compl. ¶ 47). Lastly, Plaintiffs allege that "F. Battah introduced A. Cyr to Dustin 'Tyler' Warner, the named owner of EZSCRIPTRx, LLC and told him to introduce his pharmacy clients to their product" (Am. Compl. ¶ 80).

The Plaintiffs' allegations are insufficient for this court to exercise jurisdiction over Warner. First, General allegations of conducting business in Michigan are not sufficient to exercise specific personal jurisdiction over a person. *See Mohasco Indus.,* 401 F.2d at 381 (holding "defendant's activities or the consequences thereof must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable"). Plaintiffs'

11

claim that Warner conducts business in Michigan generally is not sufficiently related to this matter for the court to exercise jurisdiction (Am Compl. ¶ 47).

Plaintiffs' second allegation, that Warner "controls" EZSCRIPTRx, is also insufficient to exercise jurisdiction over Warner (Am. Compl. ¶ 46). Control over a company is not the test for jurisdiction. To exercise jurisdiction over Warner, Plaintiffs must allege sufficient facts to show Warner reached out to or targeted Michigan. *See Burger King,* 471 U.S. at 475 (holding a defendant cannot be haled into court as the result of the unilateral activity of another party or third person.)

Plaintiffs' final allegation also fails to show Warner targeted Michigan. In fact, Plaintiffs' allegation purports it was F. Battah, not Warner, who reached into Michigan to contract with Cyr. Plaintiffs allege, "F. Battah introduced A. Cyr to Dustin 'Tyler' Warner … and told him to introduce his pharmacy clients to their product" (Am. Compl. ¶ 80). In the absence of affidavits supporting jurisdiction, this Court fails to see how such a claim shows Warner targeted Michigan or a Michigan resident.

In sum, Plaintiffs' allegations for jurisdiction with respect to Warner are either too vague or indicate it was F. Battah that facilitated all contact with Cyr and Michigan on behalf of EZSCRIPTRx (*See* Am. Compl. ¶ 80). There is insufficient evidence that Warner targeted Michigan or a Michigan resident. The Court may not exercise personal jurisdiction over Warner.

### 6. Michael Battah, Shalimar Maakar

Plaintiffs concede that specific personal jurisdiction over Defendants Michael Battah and Shalimar Maakar is improper. Hr'g Tr. 8, ¶¶ 6-21. Sept. 22, 2022.

### C. Venue

The venue statute states a plaintiff may file his complaint in any forum where a substantial part of the events or omissions giving rise to the claim arose; this includes any forum

with a substantial connection to the plaintiff's claim. *See* 28 U.S.C. § 1391(a); *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

Defendants' Motion to Dismiss for Improper Venue is DENIED. "The venue statutes reflect Congress' intent that venue should always lie in *some* federal court whenever federal courts have personal jurisdiction over the defendant." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

This Court finds it has personal jurisdiction over F. Battah, RVP, SPFM, and EZSCRIPTRx. Therefore, it also finds venue is proper in the Eastern District. There is no mention of any fact by either party tying this case to the Western District of Michigan. Since jurisdiction in Michigan is proper, the Eastern District is the correct venue.

## CONCLUSION

For the reasons stated above, IT IS SO ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction or Improper Venue is GRANTED with respect to Michael Battah, Shalimar Maakar, and Dustin (Tyler) Warner and DENIED with respect to Fred Battah, Real Value Products, LLC, SPFM, LP, and EZSCRIPTRx, LLC.

IT IS SO ORDERED

s/Sean F. Cox<br>Sean F. Cox<br>United States District Judge

Dated: October 12, 2022

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 12, 2022, by electronic and/or ordinary mail.

s/Jennifer McCoy<br>Case Manager